UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**West Palm Beach Division**
*www.flsb.uscourts.gov*

IN RE:

CASALE MARBLE IMPORTS, INC.,

    Debtor.

_____/

**CASE NO. 08-19689-PGH**
**CHAPTER 11**

## <u>DEBTOR'S AMENDED PLAN OF REORGANIZATION</u>

Dated:  June 30, 2010

**Paul L. Orshan, Esq.**
**PAUL L. ORSHAN, P.A.**
**2506 Ponce de Leon Boulevard**
**Coral Gables, Florida  33134**
**TEL:  305/529-9380**
**FAX:  305/402-0777**
*paul@orshanpa.com*

**Counsel for Casale Marble**
**Imports, Inc.**

## DEBTOR'S PLAN OF REORGANIZATION

### TABLE OF CONTENTS

Page

INTRODUCTION................................................................................................................. 5
ARTICLE I
   DEFINITIONS ....................................................................................................... 5
ARTICLE II
   TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND
   UNITED STATES TRUSTEE'S FEES ........................................................................... 14
      Administrative Claims .................................................................................... 14
      Priority Tax Claims......................................................................................... 15
      United States Trustee's Fees............................................................................ 15
ARTICLE III
   CLASSIFICATION OF CLAIMS AND INTERESTS......................................................... 16
      Generally ...................................................................................................... 16
      Classification................................................................................................. 16
ARTICLE IV
   TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ......................................... 16
      Generally ...................................................................................................... 16
      Treatment ...................................................................................................... 17
          Class 1.  Allowed Priority Claims................................................................. 17
          Class 2.  Allowed RBC Secured Claim ........................................................... 17
          Class 3.  Allowed Unsecured Claims.............................................................. 18
          Class 4.  Allowed Interests............................................................................. 18
ARTICLE V
   EFFECTUATION AND IMPLEMENTATION OF PLAN ................................................. 18
      Management................................................................................................... 17
      Delivery of Restructured Loan Documents to RBC............................................. 18
      Plan Funding ................................................................................................. 18
      Miscellaneous ................................................................................................ 17
ARTICLE VI
   THE REORGANIZED DEBTOR.................................................................................... 15
ARTICLE VII
INJUNCTION, DISCHARGE AND OTHER LIMITATIONS OF LIABILITY ........................ 15
   Applicability of Injunction/Stay as to Reorganized Debtor Assets.................................... 21
      Discharge ...................................................................................................... 21
      Exculpation ................................................................................................... 21
      Release ......................................................................................................... 21
ARTICLE VIII
   OBJECTIONS TO CLAIMS ......................................................................................... 22
ARTICLE IX
   EXECUTORY CONTRACTS AND LEASES .................................................................. 23

ii

Assumption or Rejection of Executory Contracts and Unexpired Leases ........................ 21
Approval of Assumption or Rejection ............................................................................. 21
Cure of Defaults.............................................................................................................. 21
Rejection Claims Bar Date.............................................................................................. 21

ARTICLE X
DISTRIBUTIONS................................................................................................................. 24
Distributions by the Disbursing Agent............................................................................ 24
Delivery of Distributions in General............................................................................... 24
Cash Payments ................................................................................................................ 24
Interest on Claims ........................................................................................................... 25
No *De Minimus* Distributions ......................................................................................... 25
Face Amount.................................................................................................................... 25
Failure to Negotiate Checks............................................................................................ 25
Unclaimed Property ........................................................................................................ 25
No Payment or Distribution Pending Allowance............................................................. 26
Disputed Distributions .................................................................................................... 26
Estimation of Disputed Claims ....................................................................................... 26
Resolution of Disputed Claims and Interests................................................................... 27
Distributions in Complete Satisfaction ........................................................................... 27
Compliance with Tax Requirements................................................................................ 27
ARTICLE XI
PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS IF NECESSARY .............. 27
ARTICLE XII
EFFECT OF CONFIRMATION.......................................................................................... 28
ARTICLE XIII
AMENDMENT AND MODIFICATION ............................................................................. 28
ARTICLE XIV
REVOCATION ................................................................................................................... 28
ARTICLE XV
RETENTION OF JURISDICTION .................................................................................... 28
ARTICLE XVI
MISCELLANEOUS PROVISIONS .................................................................................... 31
Substantial Consummation of Plan.................................................................................. 31
Confirmation Order Controls........................................................................................... 31
Headings .......................................................................................................................... 31
Successors and Assigns.................................................................................................... 31
Notices ............................................................................................................................. 31
Exemption from Taxes..................................................................................................... 31
Binding Effect of Plan...................................................................................................... 32
Final Order....................................................................................................................... 32
Business Days .................................................................................................................. 32
Severability of Plan Provisions........................................................................................ 32
Governing Law ................................................................................................................ 32

Filing of Additional Documents ........................................................................................ 32

Time .................................................................................................................................. 33

Saturday, Sunday or Legal Holiday................................................................................... 33

No Attorneys Fees............................................................................................................. 33

Preservation of Rights of Setoff........................................................................................ 33

Defenses with Respect to Unimpaired Claims.................................................................. 33

No Injunctive Relief.......................................................................................................... 33

No Admissions................................................................................................................... 33

Dissolution of the Committee ........................................................................................... 33

Entire Agreement .............................................................................................................. 34

ARTICLE XVII

CONCLUSION   ................................................................................................................ 34

Exhibit A – List of Contracts and Unexpired Leases to be Assumed and Cure Payments.

## INTRODUCTION

Casale Marble Imports, Inc., the debtor and debtor in possession (the "Debtor"), hereby proposes its Plan of Reorganization (the "Plan") pursuant to Section 1121 of the United States Bankruptcy Code.

Reference is made to the Disclosure Statement (the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the Debtor's history, business, events leading up to this Chapter 11 Case, treatment of Claims against and Interests in the Debtor, preservation of Claims and causes of action, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE HEREON ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE 1

## DEFINITIONS

**A.    Scope of Definitions.**  For purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and designated with the initial letter of each word being capitalized and, unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and capitalized terms shall refer to the terms as defined in this Article.

1.    **"Administrative Claim"** shall mean a Claim against the Estate of the Debtor allowed by order of the Bankruptcy Court pursuant to Section 503(b) and entitled to priority under Section 507(a)(1) or 507(b) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate; (ii) any payment to be made under this Plan to cure a default as an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code, (iii) any Ordinary Course Administrative Claim, (iv) compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Sections 502(b)(9) or 546(c)(2)(A) of the Bankruptcy Code, and (vi) all fees and charges assessed against the Debtor's Estate pursuant to 28 U.S.C. §1930(a).

5

2.      **"Administrative Claims Bar Date"** shall mean the last date to request payment of Administrative Claims, as set by order of the Bankruptcy Court, other than with respect to (a) Claims of Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any professional or any other Person for making a substantial contribution in the Chapter 11 Case), and (b) Ordinary Course Administrative Claims.

3.      **"Affiliate"** shall have the meaning set forth in the Section 101(2) of the Bankruptcy Code.

4.      **"Affiliate Guaranty"** shall mean collectively (i) each of those certain personal guaranties executed by D. Walter Casale to and in favor of RBC in respect of the obligations owed by the Debtor to RBC, (ii) each of those guaranties executed by Commercial Real Estate Investment Group, Corp. to and in favor of RBC in respect of the obligations owed by the Debtor to RBC, and (iii) each of those certain guaranties executed by any Affiliate of the Debtor to and in favor of RBC in respect of the obligations owed by the Debtor to RBC.

5.      **"Allowed Administrative Claim"** shall mean all or that portion of an Administrative Claim which has been allowed by a Final Order of the Bankruptcy Court.

6.      **"Allowed Claim"** shall mean a Claim: (a) (i) proof of which was timely and properly filed on or before the Bar Date or the Administrative Claims Bar Date, as applicable, (ii) proof of which was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) if no such proof was filed or deemed filed, such Claim has been or hereafter is listed by the Debtor on its Schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent and, in any case, as to which (A) no objection to the allowance thereof has been or is interposed, or (B) any such objection has been settled, withdrawn or determined by a Final Order, (b) based on an application of a Professional under Section 330, Section 331, or Section 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case, to the extent such application is approved by a Final Order; or (c) expressly allowed under this Plan or the Confirmation Order.  Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims for the period from and after the Petition Date.

7.      **"Allowed Interest"** shall mean an Interest which has been allowed by a Final Order of the Bankruptcy Court.

8.      **"Allowed Priority Claim"** shall mean a Priority Claim which has been allowed by a Final Order of the Bankruptcy Court.

9.      **"Allowed Secured Claim"** shall mean a Secured Claim which has been allowed by a Final Order of the Bankruptcy Court.

10. **"Allowed Unsecured Claim"** shall mean an Unsecured Claim which has been allowed by a Final Order of the Bankruptcy Court.

11. **"Ballot"** shall mean the ballot accompanying the Disclosure Statement upon which holders of impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

12. **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.*, in effect as of the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case.

13. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, or such other court as may hereafter have jurisdiction over this proceeding.

14. **"Bankruptcy Rules"** shall mean (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code, (c) the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case or proceedings herein, as the case may be.

15. **"Bar Date"** shall mean November 18, 2008, the last date for creditors and holders of Interests to have filed proofs of Claims or Interests in this Chapter 11 Case, provided however that with respect to governmental units, the Bar Date shall mean January 12, 2009, 180 days from the Petition Date.

16. **"Business Day"** shall mean any other day other than a Saturday, Sunday, or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

17. **"Cash"** shall mean money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

18. **"Cash Collateral Motion"** shall mean that certain Motion, dated July 14, 2008, for the Entry of an Order (A) Authorizing the Debtor (1) to Use Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. ' 363, and (2) to Provide Adequate Protection in Connection Therewith and Pursuant to 11 U.S.C. ' 363, and (B) Setting a Final Hearing Pursuant to Bankruptcy Rule 4001 and all subsequent motions seeking interim and/or final use of cash collateral.

19. **"Cash Collateral Order"** shall mean, collectively, the Interim Order (1) Authorizing the Debtor To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated July 18, 2008 and all subsequent orders.

20.     **"Chapter 11 Case"** shall mean the proceedings under Chapter 11 of the Bankruptcy Code for the reorganization of the Debtor, which were commenced in the Bankruptcy Court on July 14, 2008, under Case Number 08-19689-BKC-PGH.

21.     **"Claim"** shall mean any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, including, without limitation, any claim of right to payment, liquidated, unliquidated, contingent, matured, unmatured, disputed or undisputed, legal, equitable, secured or unsecured.

22.     **"Claimant"** shall mean any Person who asserts a Claim in this Chapter 11 Case.

23.     **"Claim Objection Deadline"** shall mean the date set by order of the Bankruptcy Court (without notice or hearing) for objecting to Claims against the Estate.

24.     **"Class or Classes"** shall mean each class or classes of creditors or holders of Interests classified under the Plan pursuant to Section 1122 of the Bankruptcy Code.

25.     **"Confirmation"** shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

26.     **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the computerized docket maintained by the clerk of the Bankruptcy Court.

27.     **"Confirmation Hearing"** shall mean the hearing conducted by the Bankruptcy Court: (i) under Section 1125 of the Bankruptcy Code, for final approval of the Disclosure Statement; if applicable, and (ii) under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

28.     **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

29.     **"D. Walter Casale"** shall mean Donato Walter Casale, the President and 100% owner of the Debtor.

30.     **"Debtor"** shall mean Casale Marble Imports, Inc.

31.     **"Disbursing Agent"** shall mean the Reorganized Debtor.

32.     **"Disclosure Statement"** shall mean the Disclosure Statement and exhibits thereto that relate to this Plan and prepared pursuant to Section 1125 of the Bankruptcy Code, as amended, modified or supplemented from time to time, which has been approved by the Bankruptcy Court and which is distributed to holders of Claims and Interests with this Plan.

33.     **"Disputed Claims"** shall mean all Claims: (a) which are listed in the Schedules as disputed, contingent or unliquidated or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party in interest, and (iii) no Final Order has been entered thereon. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless a Final Order has been entered allowing such Claim. Without limiting any of the above, a Claim that is the subject of a pending objection, motion, complaint, counterclaim, setoff, avoidance action, Litigation Claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim.

34.     **"Disputed Claims Fund"** shall mean the reserve created and established by the Disbursing Agent on the books and records of the Reorganized Debtor in accordance with the provisions of this Plan for the purposes of accounting for Distributions to holders of Disputed Claims in the Estate pending the determination and allowance, if applicable, thereof by Final Order of the Bankruptcy Court. Any unused amounts accounted for in the Disputed Claims Fund shall become available under the Plan, including for Distribution to holders of Allowed Claims in accordance with the terms of the Plan.

35.     **"Distribution"** shall mean each distribution to holders of Allowed Claims on account of such Allowed Claims pursuant to and under the terms of this Plan by the Disbursing Agent.

36.     **"Effective Date"** shall mean the date which is eleven (11) days after the date the Confirmation Order is entered on the Bankruptcy Court's computerized docket by the Clerk of the Bankruptcy Court, or the first Business Day thereafter.

37.     **"Estate"** shall mean the estate of the Debtor created under and pursuant to Section 541 of the Bankruptcy Code on the Petition Date.

38.     **"Executory Contracts"** shall mean all contracts, oral or written, to which the Debtor is a party and which are executory within the meaning of Section 365 of the Bankruptcy Code.

39.     **"Final Order"** shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered, provided however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable. Provided further that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

9

40.     **"Impairment"** or **"Impaired"** shall have the meaning under Section 1124 of the Bankruptcy Code.

41.     **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

42.     **"Interest"** shall mean any equity security interest in the Debtor, as the term is defined in Section 101(16) of the Bankruptcy Code, exclusive of any such interests held in treasury by the Debtor, which Interests are identified in the Schedules filed by the Debtor in this Chapter 11 Case and/or registered in the stock registers maintained by or on behalf of the Debtor, and as to which Interest no objection has been made or to which Interest has been allowed by a Final Order.

43.     **"Late-Filed Claim"** shall mean a Claim which is filed after the Bar Date.

44.     **"Leases"** shall mean, collectively, the Debtor's unexpired leases of non-residential real property existing as of the Petition Date.

45.     **"Lien"** shall mean any valid and undisputed mortgage, lien, charge, security interest, encumbrance or other security device of any kind affecting any asset of the Debtor or the Debtor's Estate.

46.     **"Litigation Claims"** shall mean any and all Claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor or the Estate, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estate of the Debtor under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtor; (xi) against any and all current and/or former officers and directors of the Debtor, including for breach of fiduciary duty; (xii) under and pursuant to any policies of insurance maintained by the Debtor, including without limitation, the directors and officers liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; and (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362.

47.    **"Loan Documents"**  shall mean, collectively: (i) that certain Promissory Note dated March 8, 2005 by and between Casale Marble Imports, Inc. and RBC Centura Bank in the principal amount of $5,000,000 (#101); (ii) that certain Business Loan Agreement dated March 8, 2005; (iii) that certain Commercial Security Agreement dated March 8, 2005; (iv) that certain Commercial Guaranty by Commercial Real Estate Investment Group, Corp dated March 8, 2005; (v) that certain Commercial Guaranty by Donato Walter Casale dated March 8, 2005 and Assignment of Life Insurance Policy as Collateral;  (vi) that certain First Amendment to Loan Agreement dated September 14, 2006; (vii) that certain Second Amendment to Loan Agreement dated May 1, 2007; (viii) that certain Promissory Note dated January 20, 2006 in the principal amount of $1,000,000 (#102); (ix) that certain Commercial Security Agreement dated January 20, 2006; (x) that certain Promissory Note, dated January 26, 2006 in the principal amount of $280,000 (#103); (xi) that certain Commercial Guaranty by Donato Walter Casale dated January 26, 2006; (xii) that certain Commercial Security Agreement dated January 26, 2006; (xiii) that certain Promissory Note dated January 4, 2007 in the principal amount of $232,437.00 (#104); (xiv) that certain Commercial Guaranty by Donato Walter Casale dated January 4, 2007; (xv) that certain Commercial Security Agreement dated January 4, 2007; (xvi) that certain Change in terms Agreement dated May 29, 2007 in the principal amount of $8,000,000 (#101); (xvii) that certain Business Loan Agreement dated May 29, 2007; (xviii) that certain promissory note dated August 17, 2007 in the principal amount of $621,850.00 (#105); (xix) that certain Commercial Security Agreement dated August 17, 2007, and (xx) any and all other documents or instruments evidencing, reflecting, securing and/or perfecting the obligations owed by the Debtor to RBC.

48.    **"Monthly Operating Reports"** shall mean the monthly financial reports filed by the Debtor during this Chapter 11 Case.

49.    **"Objection"** shall mean any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than an Allowed Claim or an Interest.

50.    **"Ordinary Course Administrative Claims** shall mean any Administrative Claim based on liabilities incurred by the Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business including Administrative Claims on account of services provided after the Petition Date to the Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of that contract or lease, but excluding claims of Professional.

51.    **"Orshan"** shall mean Paul L. Orshan, P.A., the Debtor's court-approved general bankruptcy counsel.

52.     **"Person"** shall mean an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

53.     **"Petition Date"** shall mean July 14, 2008, the date this Chapter 11 Case was commenced.

54.     **"Plan"** shall mean this plan of reorganization in its entirety, together with all addenda, exhibits and schedules in its present form or as it may be modified, amended or supplemented from time to time.

55.     **"Priority Claim"** shall mean a Claim entitled to priority under Section 507(a)(3)-(7) and (9) of the Bankruptcy Code.

56.     **"Priority Tax Claim"** shall mean a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

57.     **"Professional"** shall mean a Person (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

58.     **"Pro Rata Share"** means, with respect to any Distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class, and (ii) the aggregate maximum allowable amount of all Disputed Claims in such Class for which a reserve must be established under the Plan.

59.     **"RBC"** shall mean RBC Bank, formerly known as RBC Centura.

60.     **"RBC Collateral"** shall mean any and all property of the Debtor that secures the repayment of the obligations owed by the Debtor to RBC pursuant to and as set forth in the Loan Documents.

61.     **"RBC Foreclosure Litigation"** shall mean that certain lawsuit pending as of the Petition Date styled *RBC Centura Bank. v. Casale Marble Imports Inc., Donato W. Casale, and Commercial Real Estate Investment Group Corp.* (Case No. CA 014586 XXXX MB) pending in the Circuit Court in and for the Fifteen Judicial Circuit in and for Palm Beach County, Florida.

62.     **"RBC Secured Claim"** shall mean the Allowed Secured Claim of RBC arising under and pursuant to the Loan Documents as of the Effective Date of the Plan, including after giving effect to the terms and provisions of the Cash Collateral Order.

63.    **"Rejection Claim"** shall mean a Claim arising under Section 502(g) of the Bankruptcy Code from the rejection under Section 365 of the Bankruptcy Code, or under this Plan, of an Executory Contract or unexpired lease which the Debtor has not assumed.

64.    **"Rejection Claims Bar Date"** shall mean the earlier of: (a) 30 days following the entry of the order of the Bankruptcy Court approving such rejection, provided the effectiveness of such order has not been stayed; and (b) 30 days following the Effective Date of the Plan.

65.    **"Reorganized Debtor"** shall mean Casale Marble Imports, Inc., from and after the Effective Date of the Plan.

66.    **"Reorganized Debtor Assets"** shall mean any and all assets and property of the Debtor as of the Effective Date, including, without limitation, all legal or equitable interests of the Debtor in any and all real or personal property of any nature pursuant to and encompassed by Section 541 of the Bankruptcy Code (whether existing as of the Petition Date or acquired thereafter), including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, consigned inventory acquired by the Debtor pre-petition, materials, supplies, furniture, fixtures equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Litigation Claims, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

67.    **"Restructured Loan Documents"** shall mean those certain loan documents to be executed and delivered by the Reorganized Debtor to RBC in order to document the revised payment and other terms of the Allowed RBC Secured Claim pursuant to the terms of the Plan from and after the Effective Date, including without limitation, the reinstatement and confirmation of the Affiliate Guaranty. The Restructured Loan Documents shall reflect a consolidation of the various obligations under the Loan Documents into one term loan from the Reorganized Debtor, with the restructured payment terms contained in the Plan and RBC having a first, priority lien and security interest in and to the RBC Collateral as collateral securing such restructured term loan.

68.    **"Sale Motion"** shall mean that certain motion to be filed by the Debtor on or before the Confirmation Date pursuant to Section 363 of the Bankruptcy Code seeking authority from the Bankruptcy Court to sell certain excess inventory and equipment of the Debtor at auction.

69.    **"Sale Proceeds"** shall mean the proceeds from the auction sale proposed by the Debtor pursuant to the Sale Motion.

70.    **"Schedules"** shall mean the Schedules and Statement of Financial Affairs filed by the Debtor pursuant to Sections 521(1) and 1106(a)(2) of the Bankruptcy Code, as amended and supplemented.

71.    **"Secured Claim"** shall mean a Claim which, as of the Effective Date of the Plan and, if necessary, pursuant to a valuation by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, is secured by a valid, enforceable and perfected mortgage, lien, security interest or other encumbrance of any kind against assets of the Estate, and which is not subject to avoidance

under the Bankruptcy Code or applicable non-bankruptcy law, provided however that the amount of any Secured Claim shall not exceed the value of the assets securing such Secured Claim pursuant to Section 506(a) of the Bankruptcy Code.

72.    **"Unsecured Claim"** shall mean any Claim against the Debtor's Estate, but not including an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim or a Late Filed Claim.

73.    **"Unclaimed Property"** shall mean any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Disbursing Agent as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Disbursing Agent is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made. Pursuant to Local Bankruptcy Rule 3011-1(B), Unclaimed Property shall be donated to the Bankruptcy Bar Foundation for the Southern District of Florida, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent.

**B. Rules of Interpretation.** Any term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein. The words "herein", "hereof", "hereunder" and other words of similar import refer to this Plan as a whole, not to a particular section, subsection, paragraph, subparagraph or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. All captions and headings to articles and paragraphs of the Plan are inserted for convenience and reference only and are not intended to be a part or to affect the interpretation of the Plan. Any rules of construction set forth in Section 102 of the Bankruptcy Code shall apply, unless superceded herein or in the Confirmation Order. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of the Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are not Impaired under the Plan and will be treated as follows:

1.    **Administrative Claims**. The holders of Allowed Administrative Claims against the Estate (with the exception of the Professionals employed pursuant to Sections 327, 503(b)(3) and (4) and 1102 of the Code, who will be paid 100% of the amount allowed of such Administrative Claims by the Bankruptcy Court, upon application to the Bankruptcy Court, prior to the bar date for filing such applications and entry of an order(s) thereon) shall be paid 100% of their Allowed

Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the earlier to occur of: (i) the later of the Effective Date or the date of a Final Order allowing such Administrative Claim; or (ii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Administrative Claim and the Debtor or Reorganized Debtor.

Each Ordinary Course Administrative Claim shall be paid in full in Cash at the Reorganized Debtors' election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) on such date on which the holder of the Claim and the Reorganized Debtors agree. Payments shall be made without further action by the holder of the Ordinary Course Administrative Claim.

     **2.**     **Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim under Section 507(a)(8) of the Code shall be paid in full in Cash on the later of (a) the Effective Date (or as soon after that date as practicable) and (b) 30 days after the Claim is Allowed, provided however, that the Debtor or the Reorganized Debtor may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored Unsecured Claim provided for by this Plan. If the Debtor or the Reorganized Debtor so elect, the installment payments shall be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment shall be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after that date as practicable; and (c) another date on which the holder of the Claim and the Debtor or the Reorganized Debtor agree. The Reorganized Debtor retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

     **3.**     **United States Trustee's Fees**. The Debtor shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) on the Effective Date, and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating Cash disbursements for all relevant periods; notwithstanding anything contained in the Plan to the contrary, the Disbursing Agent shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6) until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of this Bankruptcy Court dismissing the case, or converting this case to another chapter under the United States Bankruptcy Code, and the Disbursing Agent shall provide to the U.S. Trustee, upon the payment of each post-confirmation payment, a quarterly report and appropriate affidavit indicating income and disbursements for the relevant periods. To date, the Debtor has paid all fees due and owing to the Office of the United States Trustee, and the Debtor or Reorganized Debtor, as applicable, anticipates paying all such fees through confirmation of the Plan and thereafter as provided herein.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**A.     Generally.**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in the Debtor. A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, are deemed not to be Impaired and are treated as set forth in Article II above.

**B.     Classification.**

For purposes of this Plan, the Classes of Claims and Interests shall be separated as follows:

|     |          |                            |
|-----|----------|----------------------------|
| a.  | Class 1: | Allowed Priority Claims.   |
| b.  | Class 2: | Allowed RBC Secured Claim. |
| c.  | Class 3: | Allowed Unsecured Claims.  |
| e.  | Class 4: | Allowed Interests.         |

Classes 2, 3 and 4 are Impaired under the Plan. Class 1 is not Impaired under the Plan. As such, Class 1 is deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

# ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**A.     Generally.**

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Allowed Interests pursuant to this Article IV shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Allowed Interests in the Debtor and the Debtor's Estate, except as otherwise expressly provided in this Plan or the Confirmation Order.

**B.    Treatment**.

1.    Class 1. Allowed Priority Claims.  All Allowed Priority Claims shall be paid in full, in Cash, on the later of: (i) the Effective Date; or (ii) within 30 days after the date of a Final Order allowing such Priority Claim.

2.    Class 2.  Allowed RBC Secured Claim.  The Allowed RBC Secured Claim of $5,067,564.54 (as of June 29, 2010) shall be satisfied in full by the payment of equal monthly installments of principal and interest over a period of 36 months after the Effective Date, which installments will be based upon a seven (7) year amortization and interest at a floating rate of 30-day LIBOR plus five percent (5%), with a balloon at maturity.  Such monthly payments shall commence on the first day of the month immediately following the month in which the Effective Date occurs and shall continue thereafter for 35 months, provided the following:

a.  Provided all monthly payments are made and the Out-of-Margin position on the Borrowing Base Certificate is reduced to $200,000.00 within the first twelve (12) months, and to $100,000.00 within the first eighteen (18) months, the loan will be extended for an additional six (6) months, at the end of twelve (12) months and eighteen (18) months, respectively.

b.  Provided all monthly payments are made during the next six-month period and the Out-Of-Margin position on the Borrowing Base Certificate is reduced to $0.00,  the loan will be extended an additional twelve (12) months;

c.  At the end of twenty-four (24) months, excess cash will be shared 50/50 between the Debtor and RBC.

d.  During Year 3, the Borrowing Base Certificate will remain at $0 and the Debtor will pay RBC (in addition to the regular loan payment) $15,000.00 each month to be applied toward the principal balance.

e.  On or before the Effective Date, the Debtor will move all operating accounts to RBC.

f.  The unpaid balance of principal, accrued interest and other charges outstanding under the RBC Allowed Secured Claim will be paid in full on the last monthly payment date (the "Maturity Date").

g.  RBC shall retain its Liens on the Reorganized Debtor Assets pursuant to and as set forth in the Loan Documents, provided however, that, on the Effective Date, the Reorganized Debtor shall execute and deliver the Restructured Loan Documents consistent with the terms of the Plan.

Also on the Effective Date, or as soon as practical thereafter, RBC, the Debtor and the Guarantors shall dismiss without prejudice the RBC Foreclosure Litigation including the Counterclaim.  In

addition, as of the Effective Date, RBC shall agree to cease prosecuting any and all claims under and pursuant to the Affiliate Guaranty, with all defaults there under being deemed cured as of the Effective Date and with such Affiliate Guaranty being reinstated and confirmed, included as a part of the Restructured Loan Documents.

3.     Class 3.  Allowed Unsecured Claims.  The holders of Allowed Unsecured Claims shall be satisfied in full by the payment of their pro rata share of $810,000.00 commencing on the first day of the  thirty-seventh month following the month in which the Effective Date occurs and continuing on a  monthly basis thereafter for a total of thirty-six (36) months.  The monthly payments for months 37 to 48 will be $17,500.00.  The monthly payments for months 49 to 72 will be $25,000.00.  Pursuant to the Projections attached to the Disclosure Statement as Exhibit B, the Debtor estimates the total amount of Allowed Unsecured Claims to equal $2,304,715.87 based on the amount of Unsecured Claims listed in the Schedules.  Although, it appears that the asserted amount of Allowed Claims is higher than the original claims of $2,276,291.50 reported on the Schedule F, the Debtor believes this is due to a timing issue.  The Debtor was still receiving pre-petition invoices from unsecured creditors as late as four (4) months after the Company filed for Chapter 11 Bankruptcy. Notwithstanding such estimate, the ultimate amount of the Allowed Unsecured Claims may be greater or less than such amount as a result of Objections to Claims that may be filed by the Debtor.  Therefore, the final dollar amount of the total Allowed Unsecured Claims may increase or decrease, which will cause the percentage of distribution to increase or decrease accordingly.

Each holder of an Allowed Unsecured Claim shall receive an amount equal to such holder's Pro Rata Share of each such Distribution being made hereunder.  All Distributions to holders of Allowed Unsecured Claims hereunder shall be made from Cash on deposit as of the Effective Date and Cash generated by the Reorganized Debtor's operations from and after the Effective Date.

4.     Class 4.  Allowed Interests.  This class consists of the 100% interest in the Debtor owned and held by D. Walter Casale.  D. Walter Casale shall retain his equity interests in the Reorganized Debtor from and after the Effective Date.

## ARTICLE V

## EFFECTUATION AND IMPLEMENTATION OF PLAN

On the Effective Date of the Plan, all Reorganized Debtor Assets, including Cash and Litigation Claims, shall be transferred to, be deemed transferred to, and vested in the Reorganized Debtor, free and clear of all liens, claims, encumbrances and interests existing before the Effective Date except as provided under the Plan or the Confirmation Order.  From and after the Effective Date, the Reorganized Debtor may use, acquire, and dispose of property free of any restrictions of the

Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan or the Confirmation Order.

From and after the Effective Date, the Debtor will continue to exist as a separate corporate entity, with all the powers of a corporation under applicable law in the State of Florida pursuant to its articles of incorporation and bylaws or other organizational documents in effect prior to the Effective Date. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (b) the other matters provided for under, or in furtherance of, this Plan involving corporate action required of the Debtor, will be deemed to have occurred and become effective as provided in this Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the stockholders or directors of the Debtor. The Reorganized Debtor will assume any pre-Petition Date indemnification obligations to any current or former directors and officers employed by the Debtor as of the Effective Date.

To the extent applicable, the Reorganized Debtor shall be deemed a representative of the Estate appointed for all purposes as provided in and pursuant to Section 1123(b)(3) of the Bankruptcy Code, including to pursue applicable Litigation Claims.

1.     MANAGEMENT

After the Effective Date, it is contemplated that the Reorganized Debtor shall continue to be managed by D. Walter Casale as its president and by Sylvana Casale as its controller. As of the Effective Date, D. Walter Casale's annual salary from the Reorganized Debtor shall be in the amount of $100,000, and Sylvana Casale's annual salary from the Reorganized Debtor shall be in an amount equal to $75,000. From and after the Effective Date, D. Walter Casale and Sylvana Casale shall also be entitled to any and all benefits that they received from the Debtor prior to the Effective Date.

2     DELIVERY OF THE RESTUCTURED LOAN DOCUMENTS TO RBC.

On the Effective Date, the Reorganized Debtor shall deliver the Restructured Loan Documents required by RBC in connection with the restructured terms of the Allowed RBC Secured Claim.

3.     PLAN FUNDING

The Plan will be funded with Cash existing on the Effective Date and Cash generated by and from the Reorganized Debtor's operations from and after the Effective Date, as set forth in the Projections.

4.     MISCELLANEOUS

Except to the extent otherwise provided under the Plan or the Confirmation Order, upon the Effective Date, all pre-Petition Date agreements (other than assumed contracts and third party guaranties and indemnities of the Debtor's obligations), credit agreements, pre-Petition Date loan

documents and post-Petition Date loan documents to which the Debtor is a party, and all lien claims and other evidence of liens against the Debtor, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtor. The holders of, or parties to, such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Disputed Claims against the Debtor have become Allowed Claims or have been disallowed by Final Order, and all Distributions required by the terms of the Plan have been made in accordance with the Plan, or at such earlier time as the Reorganized Debtor deems appropriate, the Reorganized Debtor shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI

## **THE REORGANIZED DEBTOR**

The Reorganized Debtor will have authority to take all actions necessary to: (a) investigate, hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Reorganized Debtor Assets, including but not limited to the Litigation Claims; (b) investigate and reconcile Claims and contest objectionable Claims and Disputed Claims; (c) make all Distributions to be funded under the Plan; (d) pay all necessary expenses incurred in connection with the duties and responsibilities of the Reorganized Debtor under the Plan; (e) administer, implement and enforce all provisions of the Plan; (f) file tax returns and make other related corporate filings; (g) administer the Plan and the Reorganized Debtor Assets; (h) abandon any Reorganized Debtor Assets; (h) to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable; (i) take and any all actions not inconsistent with applicable law or not expressly prohibited by this Plan; and (j) undertake such other responsibilities as are reasonable and appropriate in connection with the Plan.

On the Effective Date of the Plan, or as soon thereafter as possible, the Reorganized Debtor shall establish a Disputed Claims Fund. The Reorganized Debtor shall be authorized to make Distributions to the holders of Allowed Claims and Allowed Interests pursuant to the terms of the Plan, provided that the Reorganized Debtor maintains the Disputed Claims Fund, if applicable.

To the extent there exists as of the Effective Date Disputed Claims in any Class, the Disbursing Agent shall reserve on the books and records of the Reorganized Debtor from any Distribution an amount equal to the pro rata portion of such Distribution to which such Disputed Claim would be entitled if allowed in the amount asserted by the holder of such Disputed Claim. If a Disputed Claim is allowed, in part or in full, then the Disbursing Agent shall distribute to the holder of any such Claim an amount equal to such Claimant=s pro rata share, based on such Allowed

20

Claim, of all Distributions previously made to holders of Allowed Claims in the Class of Claims at issue. The balance, if any, of the reserve for such Disputed Claim, including in the event the Disputed Claim is disallowed in its entirety, shall be deemed Cash for use by the Reorganized Debtor for all purposes under the Plan. Notwithstanding anything herein to the contrary, no interest shall accrue or be payable on the reserve in respect of any Disputed Claims.

Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, the provisions of the Disclosure Statement and the Plan that permit the Reorganized Debtor to enter into settlements and compromises of any Litigation Claims shall not have, and are not intended to have, any *res judicata* effect with respect to any Litigation Claims that are not otherwise treated under the Plan and shall not be deemed a bar to asserting such Litigation Claims, regardless of whether or to what extent such Litigation Claims are specifically described in the Plan or Disclosure Statement relating hereto. Unless any of the Litigation Claims are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court, all such Litigation Claims are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to the Litigation Claims upon or after confirmation or consummation of the Plan.

Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action, including Litigation Claims, possessed by the Debtor or the Debtor's Estate prior to the Effective Date.

In the event that the Bankruptcy Court, or any other court of competent jurisdiction, determines that the assignment of any claim, right or cause of action, including without limitation, the Litigation Claims to the Reorganized Debtor pursuant to this Plan, is invalid, or does not grant to the Reorganized Debtor the standing and all other rights necessary to pursue such claim, right or cause of action, then in such case the Reorganized Debtor shall be deemed appointed as the representative of the Estate for purposes of enforcing and pursuing such claim, right or cause of action, including without limitation, the Litigation Claims, and the proceeds thereof shall be distributed in accordance with term of the Plan.

## ARTICLE VII

### *INJUNCTION, DISCHARGE AND OTHER LIMITATIONS OF LIABILITY*

#### *1.     Applicability of Injunction/Stay as to Reorganized Debtor Assets*

*Unless otherwise provided herein, all injunctions or stays applicable to the property of the Estate pursuant to section 541 of the Bankruptcy Code (including property acquired after the Petition Date), whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect with respect to the Reorganized Debtor Assets. In addition, the Reorganized Debtor shall have the right to invoke the*

*provisions of the Bankruptcy Code made applicable by the Plan to the Reorganized Debtor Assets and all of the Bankruptcy Rules until the entry of a final decree closing this Chapter 11 Case.*

*Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, causes of action, liabilities or any equity Interests with respect to the Debtor or its property based upon any act or omission, transaction or other activity of any kind or nature that occurred or arose prior to the Effective Date, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Person has voted to accept the Plan and any successors, assigns or representatives of the foregoing, will be precluded and permanently enjoined on and after the Effective Date from, on account of such Claims, rights, causes of action, liabilities or any equity Interests, (a) commencing or continuing in any manner any action or other proceedings against the Reorganized Debtor or the Reorganized Debtor Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtor or any Reorganized Debtor Assets, (c) creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtor or any Reorganized Debtor Assets, and (d) asserting any Claims that are released hereby or subject to discharge pursuant hereto.*

*Confirmation of this Plan shall act as an injunction against any Person commencing or continuing against the Reorganized Debtor or the Reorganized Debtor Assets, any action, employment of process, or act to collect, offset, or recover any Claim or cause of action such person may possess against the Debtor.*

    2.    **_Discharge._**

*Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on Unsecured Claims from the Petition Date. Except as provided in this Plan or the Confirmation Order, confirmation of this Plan discharges the Debtor and the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (iii) the holder of a Claim based on such debt has accepted this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).*

## ARTICLE VIII

## OBJECTIONS TO CLAIMS

The Debtor shall have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment Objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and this Plan. Except with respect to Administrative Claims, Objections

to Claims must be filed by the Claim Objection Deadline, as may be extended by the Bankruptcy Court from time to time.

An Objection to the allowance of a Claim or Interest shall be in writing and may be filed with the Bankruptcy Court by the Debtor, at any time on or before the Claim Objection Deadline, unless another date is established by the Bankruptcy Court or this Plan. The failure by the Debtor to object to any Claim or Interest for voting purposes shall not be deemed a waiver of the Debtor's right to object to, or re-examine, any such Claim in whole or in part.

To the extent that an Objection to a Claim is filed and remains unresolved as of the Effective Date, distribution on such Disputed Claim shall not be made unless and until a Final Order is entered allowing such Disputed Claim. The Disbursing Agent shall account for all Disputed Claims at such time as he/she makes a Distribution under this Plan through the Disputed Claims Fund. On the Effective Date, the Reorganized Debtor shall prosecute in the place of the Debtor any and all outstanding Objections to Claims.

## ARTICLE IX

## EXECUTORY CONTRACTS AND LEASES

The executory contracts and unexpired leases between a Debtor and any Person are dealt with as follows:

**A.     Assumption or Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases attached as Exhibit A attached hereto shall be deemed assumed or rejected as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been assumed or rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to assume or reject has been filed with the Bankruptcy Court before the Confirmation Date.

### B.     Approval of Assumption or Rejection.

Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption of the executory contracts and unexpired leases assumed under and in accordance with this Plan or otherwise during the Chapter 11 Case; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under and in accordance with this Plan or otherwise during the Chapter 11 Case. Notwithstanding anything contained herein to the contrary, the Debtor retains the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease, thus changing the treatment of the contract or lease under this Plan, at any time prior to the Effective Date.

### C.     Cure of Defaults.

On the Effective Date or as soon after that date as practicable, the Reorganized Debtor shall cure any defaults under any executory contract or unexpired lease assumed or to be assumed under this Plan in accordance with Bankruptcy Code Section 365(b)(1). The Reorganized Debtor shall not,

and need not as a condition to assuming any executory contract or unexpired lease under this Plan, cure any default relating to a Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

### D.    Rejection Claims Bar Date.

All Rejection Claims arising from the rejection of any executory contract or unexpired lease under this Plan are required to be filed with the Bankruptcy Court no later than the Rejection Claims Bar Date. Any such Rejection Claim not filed by the Rejection Claims Bar Date shall be forever barred. With respect to any executory contract or unexpired lease rejected by the Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim arising from such rejection is the Rejection Claims Bar Date.

## ARTICLE X

## DISTRIBUTIONS

### A.    Distributions by the Disbursing Agent.

Subject to the terms of the Plan, all Distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by this Plan without further order of the Bankruptcy Court.

### B.    Delivery of Distributions in General.

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Debtor or Disbursing Agent has not received a written notice of a change of address. The Disbursing Agent may require any creditor entitled to a Distribution under the Plan to furnish to the Disbursing Agent its, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service. The Disbursing Agent may condition any Distribution under the Plan on the receipt of such TIN. If any creditor entitled to a Distribution hereunder fails to provide the Disbursing Agent with a requested TIN within forty-five (45) days after the request thereof by the Disbursing Agent, then such failure shall be deemed to be a waiver of such creditor's interest against the Estate and the Reorganized Debtor and any future Distributions, including the right to receive any future Distributions, and such waived Distributions shall constitute and be treated as Unclaimed Property.

### C.    Cash Payments.

Cash payments to be made pursuant to this Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

**D.    Interest on Claims**.

Unless otherwise specifically provided for in this Plan or the Confirmation Order or required by applicable bankruptcy law, post-Petition Date interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**E.    No *De Minimus* Distributions**.

Other than in the final Distribution, no payment of Cash in an amount of less than $10 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be made part of the Cash for use in accordance with this Plan.

**F.    Face Amount.**

Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article X, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely filed or deemed filed, zero (0).

**G.    Failure to Negotiate Checks**.

Checks issued in respect of Distributions under this Plan shall be null and void if not negotiated within 90 days after the date of issuance.  Any amounts returned to the Disbursing Agent in respect of such non-negotiated checks shall be held by the Disbursing Agent, until such time as it qualifies for Unclaimed Property or if earlier a request for reissuance is received by the Disbursing Agent.  Requests for reissuance of any such check shall be made in writing, directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  All such amounts that become Unclaimed Property and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Disbursing Agent or the Reorganized Debtor.

**H.    Unclaimed Property**.

If any Distribution of funds pursuant to the Plan remains unclaimed for a period of ninety (90) days after it has been delivered to the holder entitled thereto, then the amount of such Distribution unclaimed shall, pursuant to Local Bankruptcy Rule 3011-1(B), be donated to the Bankruptcy Bar Foundation for the Southern District of Florida, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent.

A distribution of funds is unclaimed, if, without limitation, the holder of a Claim entitled thereto does not cash a check or returns a check or if the check mailed to the holder at the address set forth in the Debtor's Schedules or set forth in a proof of Claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable. Except as otherwise expressly provided in the Plan, the Disbursing Agent may setoff or recoup against any Claim and the payments made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Disbursing Agent may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent of any Claim that the Disbursing Agent may have against the holder of such Claim.

Unless the holder of a Claim advises the Disbursing Agent or their attorneys in writing of a change of address, all distributions or notices shall be sent to the holder at his address as stated in the Debtor's Schedules, as stated in a properly filed proof of Claim or to such creditor's attorney of record in this Chapter 11 Case. The Disbursing Agent shall have no obligation to locate the holder of a Claim whose distribution or notice is properly mailed but nevertheless returned.

## I.    No Payment or Distribution Pending Allowance.

All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim or Interest allowed by operation of law, Final Order of the Bankruptcy Court or this Plan. Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim or Interest to the extent it is a Disputed Claim, unless and until the Disputed Claim becomes an Allowed Claim. No partial distributions will be made while an Objection is pending to part or all of a Claim.

## J.    Disputed Distributions.

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Disbursing Agent may, in lieu of making such Distribution to such holder, make such Distribution (or any amount estimated pursuant to Section 502(c) of the Bankruptcy Code) into the Disputed Claims Fund until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

## K.    Estimation of Disputed Claims.

In order to effectuate Distributions pursuant to this Plan and avoid undue delay in the administration of the Estate, the Reorganized Debtor shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. All of these objection and resolution procedures are cumulative and not necessarily exclusive of one another. In addition to seeking estimation of Claims as provided herein, the Reorganized Debtor may resolve or adjudicate any Disputed Claim in the manner in which the

amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, subject only to the terms of this Plan.

## L. Resolution of Disputed Claims and Interests.

Subject to the terms of the Plan, the Reorganized Debtor shall have the right (a) to initiate and prosecute any objections to Claims against the Debtor or the Estate, (b) to request estimation of each such Claim, (c) to litigate any objection to Final Order, (d) to settle or to compromise any Claim, or (e) to withdraw any objection to any Claim (other than an Allowed Claim or a Claim that is deemed to be allowed pursuant to this Plan or a Final Order).

## M. Distributions in Complete Satisfaction.

The Distributions and rights provided under this Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor's Estate and all liens upon any Reorganized Debtor Assets, except as provided under the terms of the Plan. The holders of liens satisfied, discharged and released under this Plan shall execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Disbursing Agent evidencing the satisfaction, discharge and release of such liens.

## N. Compliance with Tax Requirements.

In connection with this Plan and the Distributions made in accordance thereto, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE XI

## PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS IF NECESSARY

If all of the applicable requirements of Section 1129(a) of the Bankruptcy Code are met other than Paragraph 8 of said such section, which requires that all Impaired Classes accept the Plan, the Debtor will then seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code, which is commonly referred to as the "cram down" provision. For the purposes of seeking Confirmation under the cram down provision of the Bankruptcy Code, should that alternative means of Confirmation prove to be necessary, the Debtor reserves the right to modify or vary the terms of the Plan with regard to the Allowed Claims of any rejecting classes, so as to comply with the requirements of Section 1129(b).

## ARTICLE XII

## EFFECT OF CONFIRMATION

This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtor and all creditors and all parties in interest and their successors and assigns in accordance with Section 1141 of the Bankruptcy Code.

## ARTICLE XIII

## AMENDMENT AND MODIFICATION

The Debtor may alter, amend, or modify this Plan under Section 1127 of the Bankruptcy Code, or as otherwise permitted, at any time before the Confirmation Date. After the Confirmation Date and before the substantial consummation of this Plan, and in accordance with the provisions of Section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Reorganized Debtor may, so long as the treatment of holders of Claims under this Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

## ARTICLE XIV

## REVOCATION

The Debtor reserves the right, at any time prior to the substantial consummation (as that term is defined in Section 1101(2) of the Bankruptcy Code) of this Plan, to revoke or withdraw this Plan. If this Plan is revoked or withdrawn or if the Confirmation Date does not occur, this Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtor or any other Person, constitute an admission of any fact or legal conclusion by the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE XV

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain, after the Effective Date, exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     determine all controversies and disputes arising under or in connection with the Plan and all agreements referred to in the Plan, including but not limited to, all Litigation Claims brought by the Debtor or the Reorganized Debtor.

(b)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(c)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for services provided on or before the Effective Date;

(d)     hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date, including proceedings with respect to the rights and Claims of the Reorganized Debtor to recover property under Sections 542, 543 or 553 of the Bankruptcy Code, or to bring any Litigation Claims, or otherwise to collect or recover on account of any claim or Litigation Claim that the Reorganized Debtor may have;

(e)     determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)     ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(g)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, indentures and other agreements or documents;

(h)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all Exhibits to this Plan) or the Confirmation Order,

including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(j)       consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

(k)       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(l)       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)      determine any other matters that may arise in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in this Plan;

(n)       hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(o)       continue to enforce the automatic stay through the date of the final Distribution hereunder;

(p)       hear and determine: (i) disputes arising in connection with the interpretation, implementation or enforcement of this Plan and the Confirmation Order; or (ii) issues presented or arising under this Plan and Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan or the Confirmation Order;

(q)       shorten or extend, for cause, the time fixed for performance of any act or thing under this Plan or the Confirmation Order, on notice or ex-parte, as the Bankruptcy Court shall determine to be appropriate;

(r)       enter any order, including injunctions, necessary to enforce the title, rights and powers of the Disbursing Agent and/or the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(s)       review any action taken or not taken by the Disbursing Agent and to appoint a successor Disbursing Agent, if necessary;

30

(t)      adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan or the Confirmation Order and all other matters contained herein;

(u)      enter a Final Decree closing the Chapter 11 Case or converting this case to a chapter 7 case; and

(v)      enter any orders necessary to effectuate the Confirmation Order and the Plan.

Failure of Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Reorganized Debtor's Estate, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

1.      Substantial Consummation of Plan.  For purposes of any future analysis regarding, *inter alia*, appellate issues, modification of Plan, administration of the Plan and jurisdiction of the Bankruptcy Court, this Plan shall be deemed substantially consummated upon the completion of the initial Distribution required under the Plan to be made on or before twenty (20) days after the Effective Date.

2.      Confirmation Order Controls.  To the extent the Disclosure Statement or any agreement entered into between or among the Debtor, the Reorganized Debtor or any third party, is inconsistent with the Plan, the Plan shall control.  To the extent that the Plan, the Disclosure Statement or any agreement entered into between or among the Debtor, the Reorganized Debtor or any third party, is inconsistent with the Confirmation Order, the Confirmation Order shall control.

3.      Headings.  The headings of the Articles, paragraphs and subparagraphs herein are inserted for convenience only and shall not affect the interpretation of the Plan.

4.      Successors and Assigns.  This Plan and all of the provisions thereof shall be binding upon and inure to the benefit of the Debtor, all creditors and interested parties and their respective heirs, executors, administrators, successors and assigns.

5.      Notices.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid.

6.      Exemption from Taxes.  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset occurring before, after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

7.     Binding Effect of Plan.  The provisions of this Plan, Confirmation Order and Plan Documents shall be binding upon and inure to the benefit of the Debtor, the Estate, any holder of any Claim or Interest treated herein or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agent, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan or Confirmation Order.

8.     Final Order.  Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtor or, after the Effective Date, the Reorganized Debtor upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

9.     Business Days.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

10.     Severability of Plan Provisions.  If prior to Confirmation any term or provision of this Plan that does not govern on appeal the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.     Governing Law.  EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THIS PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

12.     Filing of Additional Documents.  On or before substantial consummation of this Plan, the Debtor shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements

and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan or any Plan Document, including by making such supplemental disclosures or notices as any proponent deems useful.

13.    Time. Unless otherwise specified herein, in computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

14.    Saturday, Sunday or Legal Holiday. If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

15.    No Attorneys' Fees. No attorneys' fees will be paid by the Debtor with respect to any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

16.    Preservation of Rights of Setoff. The Debtor or the Reorganized Debtor, as the case may be, may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have had against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such holder.

17.    Defenses with Respect to Unimpaired Claims. Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor with respect to any unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against unimpaired Claims.

18.    No Injunctive Relief. No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

19.    No Admissions. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

20.    Dissolution of the Committee. Upon the Effective Date, the Committee shall be deemed dissolved. Further, the members of the Committee shall be released and discharged from all rights, duties and liabilities arising from, or related to, the Chapter 11 Case.

33

21.    Entire Agreement. This Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Reorganized Debtor's Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

## ARTICLE XVII

## CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtor and all creditors and all parties in interest and their successors and assigns in accordance with Section 1141 of the Bankruptcy Code.

Respectfully submitted this 30th day of June 2010.

CASALE MARBLE IMPORTS, INC.

By: _____
D. Walter Casale, President


PAUL L. ORSHAN, P.A.
Counsel for Casale Marble
Imports, Inc.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134
TEL:   305/529-9380
FAX:   305/402-0777
paul@orshanpa.com

By: _____
Paul L. Orshan, Esq.
Florida Bar No. 776203

34

**EXHIBIT A**
**List of Contracts and Unexpired Leases to be Assumed and Cure Payments**

## Casale Marble Imports - Leases to Assume

| Business Name | Leased Item | Serial Number | Cure Amount | Assume / Reject |
|---|---|---|---|---|
| Wood Business Systems<br>5350 NW 35th Terrace<br>Ft. Lauderdale, FL 33309 | KIP / W3002 Blue Print Copier Machine<br>Service Contract | 10514384 | $0.00 | ASSUME |
| GE Capital<br>P.O. Box 740441<br>Atlanta, GA 30374-0441 | KIP / W3002 Blue Print Copier Machine<br>Machine Contract | 10514384 | $0.00 | ASSUME |
| XEROX Capital Services, LLC.<br>P.O. Box 660501<br>Dallas, TX 75266-0501 | 2 - Professional Copiers | FKA - 614141<br>FKA - 613748 | $0.00 | ASSUME |
| Enterprise Fleet Services<br>Accounts Receivable<br>P.O. Box 970639<br>Coconut Creek, Florida 33097 | Commercial Vehicles / Vans / Trucks | Various | $0.00 | ASSUME |
| Robert Case<br>656C Wellwood Avenue<br>Lindenhurst, NY 11757 | Property at:<br>750 S.W. 17th Avenue<br>Delray Beach, Florida 33444 | Delray Beach Showroom | $0.00 | ASSUME |
| Commercial Real Estate<br>Investment Group<br>4801 Linton Blvd. 11A - #643<br>Delray Beach, FL 33445 | Property at:<br>755 S.W. 17th Avenue<br>Delray Beach, Florida 33444 | Delray Beach Offices &<br>Warehouse | $0.00 | ASSUME |
| Metro & Sivan<br>4801 Linton Blvd. 11A - #643<br>Delray Beach, FL 33445 | Property at:<br>3531 Metro Parkway<br>Fort Myers, Florida 33916 | Fort Myers Showroom &<br>Warehouse | $0.00 | ASSUME |